UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| MARY ANNE AYENDE )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>    Defendant. ) | 4:08-cv-19<br><br>*(Mattice/Carter)* |

## REPORT AND RECOMMENDATION

This action was instituted pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying the plaintiff a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of Plaintiff's Motion for Judgment on the Administrative Record (Doc. 10) and defendant's Motion for Summary Judgment (Doc. 12).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

### Plaintiff's Age, Education, and Past Work Experience

Plaintiff is 39 years old and has a high school education (Tr. 273-274). She alleges inability to perform substantial gainful activity since August 23, 2004 due to lumbar degenerative disc disease with radiculopathy and associated pain (Tr. 63). Prior to becoming disabled, Plaintiff worked as a

1

sewing machine operator and babysitter (Tr. 64).

## Application For Benefits-Administrative Proceedings

Plaintiff applied for Disability Insurance Benefits (DIB) on October 4, 2004 (Tr. 57-59). The Agency denied her claim initially (Tr. 36, 42-44), and on reconsideration (Tr. 37, 46-47). Plaintiff requested a hearing before an Administrative Law Judge (ALJ) (Tr. 35), and on February 15, 2007, appeared and testified before ALJ James Spark (Tr. 271-81). A vocational expert, Katharine R. Bradford, also testified (Tr. 281-84). On March 9, 2007, ALJ Sparks determined Plaintiff was not disabled because she could perform her past relevant jobs as either a sewing machine operator or babysitter (Tr. 21). Plaintiff requested Appeals Council review (Tr. 11-12) and submitted additional evidence, a medical source statement from Dr. Lanford (Tr. 262-65) and a brief from her representative (Tr. 266-70). On September 10, 2007, the Appeals Council denied her request for review (Tr. 9-10). The ALJ's decision thereby became the Commissioner's final decision.

## Standard of Review

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The burden of proof in a claim for Social Security benefits is upon the claimant to show disability. *Barnes v. Secretary, Health and Human Services*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once, however, the plaintiff makes a prima facie case she cannot return to her former occupation, the burden shifts to the Commissioner to show there is work in the national economy which she can perform, considering her age, education and work experience. *Richardson v. Secretary, Health and Human Services*, 735 F.2d

962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

Pursuant to § 205(g) of the Act, the Court has jurisdiction to review the agency's findings and the Commissioner's final decision "shall be conclusive" if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence" is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If supported by substantial evidence, the ALJ's findings should be affirmed even if substantial evidence would support another finding. *Casey v. Sec'y. of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). If the reviewing court determines that the Commissioner's findings are not supported by substantial evidence, the case should generally be remanded to the agency; the Court should only direct a finding of disability if "all factual issues have been resolved," and the record establishes a "clear entitlement to benefits." *Faucher v. Sec'y. of Health and Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

Findings of the ALJ

As the basis of the administrative decision of March 9, 2007, that Plaintiff was not disabled, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2005.

2. The claimant has not engaged in substantial gainful activity since August 23, 2004, the alleged onset date (20 CFR 404.1520(b) and 404.1571 et. seq.).

3. The claimant has the following severe impairments: radicular back pain (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

3

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work; stand/walk/sit for 6 hours each during an 8-hour workday with normal breaks. The claimant can perform frequent climbing, of ramps, stairs, ladders, ropes, and scaffolds, as well as balancing, stooping, kneeling, crouching, and crawling. She has mild to moderate pain with mild to moderate los [sic] of concentration.

6. The claimant is capable of performing past relevant work as a sewing machine operator and babysitter. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 23, 2004 through the date of this decision (20 CFR 404.1520(f).

(Tr. 18-22).

## Issues Presented

Plaintiff raises three errors which I will address in turn:

1. Did the Administrative Law Judge err in failing to find Plaintiff disabled under listing 1.04A?

2. Did the ALJ err in rejecting the opinion of Dr. Michael Cox?

3. Did the ALJ err in discounting complaints of pain?

## Plaintiff's Testimony

Plaintiff testified that she experienced pain in her low back which radiated down her left leg and sometimes occurred in her right leg as well (Tr. 274). Plaintiff estimated she could walk no more than 10-15 feet at one time, she could stand in one place for 15 minutes, and could lift no more than 5 pounds (Tr. 275). Plaintiff stated that she could sit in a chair, like the one in the hearing room, for no longer than 20 minutes before she had to stand up (Tr. 276).

Plaintiff acknowledged she could dress and bathe herself but alleged that she had pain when she bent over to put on her clothes and socks (Tr. 276). She said she did the cooking and spent her day keeping up with her children, doing the dishes, and sweeping the floors (Tr. 277). She said

4

although she would usually start performing these activities in a pain-free state, she would find she would have to stop due to pain (Tr. 277).

Plaintiff acknowledged she had only seen Dr. Cox on one occasion and saw him for the purpose of obtaining a medical assessment (Tr. 277). She identified Dr. Lanford as her primary treating physician, and said she had no idea why Dr. Lanford would not provide a medical assessment for her (Tr. 277). Plaintiff referred to Dr. Allan Drake as another primary care doctor (Tr. 278). She testified that Dr. Lanford performed surgery in 2006 (Tr. 278), but Plaintiff denied that the surgery or steroids produced significant improvement (Tr. 280).

Plaintiff testified that she limited her driving to going to the grocery store once each week and driving 3 miles to pick up her children from school in the afternoon (Tr. 281).

<u>Relevant Medical Evidence</u>

*Medical Evidence Submitted Prior to September 30, 2005*

Plaintiff reported she woke up with sudden onset of severe back pain on August 22, 2004 (Tr. 155). She saw Alan R. Drake, M.D., on August 23. 2004, and he found that she was markedly tender in her low back (Tr. 155). Dr. Drake assessed low back pain with radicular symptoms and ordered a magnetic resonance imaging (MRI) scan and started the medication Flexeril (Tr. 155). The MRI revealed a central herniated nucleus pulposis (HNP) that effaced Plaintiff's thecal sac and abutted her S1 nerve roots with mild displacement on her right side, mild/moderate bilateral foraminal encroachment with no central canal stenosis (Tr. 130). In a treatment note dated August 25, 2004, Dr. Drake noted the MRI had shown a bulge at L5-S1 that was encroaching on the nerves (Tr. 155). Dr. Drake stated he would refer Plaintiff to a neuro-surgeon, Dr. Cruz (Tr. 155). Plaintiff saw Dr. Cruz's physician assistant, Kristin Lepp, PAC, on August 30, 2004 (Tr. 128-29). Ms. Lepp reported

5

that Plaintiff was in no acute distress and observed her walking with a normal gait (Tr. 129). Ms. Lepp reviewed the MRI and noted it showed disc disease at L4-5 with some disc bulges at that level. She noted the MRI did not reveal any herniations, or evidence of nerve root compression, or foraminal stenosis (Tr. 129). Ms. Lepp concluded Plaintiff was suffering from lumbago and gave her a work release until September 7, 2004 to give her adequate rest to recover from the episode (Tr. 129). She also encouraged Plaintiff to lose weight (Tr. 129).

Plaintiff did not see Dr. Drake again until May 19, 2005, when she had a flare-up of her low back pain (Tr. 184). Dr. Drake found some tenderness in the LS area of Plaintiff's back, but noted that she had "OK" ranges of passive motion (Tr. 184). Other than some findings of tenderness and flexion on extension, Dr. Drake noted the remainder of his examination was unremarkable (Tr. 184).

Plaintiff had another flare-up of her back pain on September 15, 2005 (Tr. 184). She complained of pain shooting down the posterior aspect of her legs (Tr. 184). On examination, Dr. Drake reported somewhat exaggerated tenderness to her lumbar region and noted Plaintiff would not bend past her knee area (Tr. 184). Dr. Drake commented he believed Plaintiff's passive range of motion was fine. She otherwise moved around well with no obvious motor or sensory deficits noted (Tr. 184).

*Evidence Submitted After September 30, 2005 (Plaintiff's Date Last Insured)*

Plaintiff returned to see Dr. Drake on January 23, 2006 (Tr. 183). She again complained of low back pain, but denied it radiated anywhere (Tr. 183). Dr. Drake prescribed some significant pain medications, and stated he would monitor their use (Tr. 183).

On March 24, 2006, Plaintiff requested a different surgical referral complaining Dr. Cruz's report was not consistent with the information she had provided to Ms. Lepp, Dr. Cruz's physician

6

assistant (Tr. 183). Dr. Drake stated he would make a referral to Dr. Howell for a second opinion (Tr. 183).

On June 16, 2006, Dr. Drake ordered a repeat MRI of Plaintiff's lumbar spine (Tr. 182). Then, on June 28, 2006, Dr. Drake reported that the MRI had shown an annular tear and herniated disc at L5. Dr. Drake referred Plaintiff to Dr. Lanford for a neuro-surgical evaluation (Tr. 182).

Plaintiff first saw Gregory B. Lanford, M.D., on July 3, 2006, nine months after her date of last insured (Tr. 16, 258). Dr. Lanford started Plaintiff on a physical therapy regimen, and some epidural steroid injections (Tr. 258). Dr. Lanford prescribed Norflex and told Plaintiff he would see her in six or eight weeks (Tr. 258).

On September 18, 2006, Dr. Lanford reported that three epidural steroid injections had not produced any improvement in Plaintiff's condition (Tr. 255). Therefore, Dr. Lanford recommended surgery, a bilateral discectomy at L5-S1 (Tr. 255). Dr. Lanford performed the procedure on September 26, 2006 (Tr. 254).

Plaintiff had a four week post-operative visit with Dr. Lanford on October 26, 2006 (Tr. 253). Dr. Lanford reported she had "generally done well from her bilateral discectomy and nerve root compression" (Tr. 253). Dr. Lanford noted that although Plaintiff had some expected mechanical back pain, she did not have a significant radicular component (Tr. 253). Dr. Lanford's examination revealed a well-healed surgical scar, negative straight leg raising results, and a stable neurological examination (Tr. 253). Dr. Lanford scheduled a follow-up visit for six weeks (Tr. 253).

On October 26, 2006, Plaintiff had an initial physical therapy office visit (Tr. 251). Plaintiff told the therapist, Michele Drissel, she still experienced some low back ache on a constant basis and an intermittent achy sensation in her left lower extremity (Tr. 251). However, Plaintiff acknowledged

7

that her symptoms were significantly better than they were prior to her surgery (Tr. 251). Apparently, due to the distance Plaintiff lived from the physical therapy site, the therapist gave her home exercises to perform and monitored her progress through phone calls. Plaintiff then contacted the therapist, Ms. Drissel, via phone on November 14, 2006 (Tr. 250), and November 21, 2006 (Tr. 249).

On December 12, 2006, the date of her six week follow-up with Dr. Lanford, Plaintiff saw Julianne LaGasse, a general nurse practitioner (G.N.P.), who reported Plaintiff, though continuing to experience pain, was improving (Tr. 248). Plaintiff's pain was now limited to her mid calf, whereas it had previously gone all the way down to her toes. Ms. LaGasse also reported that the pain was less intense (Tr. 248). Plaintiff also complained of some residual sensation of pressure over her low back (Tr. 248). Ms. LaGasse recommended that Plaintiff continue with the home exercise program and scheduled a follow-up visit for two months (Tr. 248).

On the same date, December 12, 2006, Plaintiff also saw the physical therapist, Ms. Drissel, who reported Plaintiff was still experiencing significant nerve root irritation and swelling (Tr. 246). She opined a Medrol Dosepak could reduce Plaintiff's swelling and irritation (Tr. 246).

The next physical therapy telephone call occurred on January 9, 2007 (Tr. 245). Plaintiff reported no significant change in her symptoms and suggested that her symptoms were the same as they were prior to surgery. Ms. Drissel noted she was experiencing significant nerve root irritation (Tr. 245). This report twice mentioned Plaintiff's caring for some children and how she had difficulty doing household chores and caring for the children (Tr. 245). Ms. Drissel suggested some additional treatment options, including a lumbar support brace to help her maintain a neutral spine and the addition of the medication Lyrica (Tr. 245).

8

Plaintiff saw Michael T. Cox, M.D., at the request of her representative on January 03, 2007, 13 months after her date of last insured (Tr. 16, 243-44). Dr. Cox reported that, on physical examination, Plaintiff was not in acute distress, and was able to move throughout the examination room without using any assistive devices (Tr. 243). She was oriented times three and the motor, sensory, and cranial examinations produced unremarkable results (Tr. 243). Although straight leg raising was positive on the right when Plaintiff was lying down, straight leg raising tests produced negative results when she was seated (Tr. 243). Plaintiff stood on her heels, with difficulty, and she stood on her toes with difficulty (Tr. 243). She could stand on either leg for a brief period of time with difficulty (Tr. 243). Dr. Cox reported that her joints were free of any redness, synovitis or effusion (Tr. 244). Range of motion for Plaintiff was normal in all joints except for her lumbar spine (Tr. 244). Dr. Cox opined Plaintiff could lift up to ten pounds occasionally and up to five pounds more frequently (Tr. 239, 244). He opined Plaintiff could stand and walk for about two hours in an eight-hour day (Tr. 239, 244). She would need a break period every thirty minutes to alternate between sitting and standing (Tr. 240, 244). Dr. Cox opined that Plaintiff could sit for about four hours in an eight-hour workday (Tr. 239, 244). Dr. Cox found Plaintiff to be unrestricted in the use of her upper extremities (Tr. 244). He predicted that she would require unscheduled breaks, of up to thirty minutes each day, due to her back pain (Tr. 240, 244). Dr. Cox also predicted that Plaintiff would have good and bad days, averaging up to four such bad days each month (Tr. 240, 244). He recommended Plaintiff never perform activities that required climbing, balancing, kneeling, crouching, or crawling, as part of her workday (Tr. 241, 244).

Testimony of the Vocational Expert

The ALJ posed a hypothetical question to VE Bradford asking her to consider a younger person who had a high school education and work experience similar to Plaintiff's (Tr. 282). Next, the ALJ cited the vocational capabilities set out by the state agency reviewing physician in Exhibit 4F, which described a person capable of lifting fifty pounds occasionally, and twenty-five pounds more frequently (Tr. 173). She could stand and/or walk about six hours in an eight-hour day, and sit for about six hours in an eight-hour day (Tr. 173, 282). This person could frequently climb, balance, stoop, kneel, crouch, and crawl (Tr. 174, 282). The ALJ also added some non-exertional factors that included suffering from mild-to-moderate pain with mild-to-moderate loss of concentration (Tr. 282). VE Bradford replied that the person described in this hypothetical question could perform Plaintiff's past jobs as a babysitter or sewing machine operator (Tr. 282).

The ALJ based his second hypothetical on Dr. Cox's limitations (Tr. 239-42), and asked about a person who could only stand and walk for two hours in an eight-hour day and sit for four hours in an eight-hour day, with a sit/stand option (Tr. 282). In addition, this person suffered moderate to severe pain with a moderate-to-severe loss of concentration, and a need to take unscheduled breaks (Tr. 282). VE Bradford replied that these limitations would prevent the hypothetical person from doing the babysitter or sewing machine operator job, or any job that existed in significant numbers in the region (Tr. 282-83). The ALJ ultimately rejected the limitations set out by Dr. Cox, and, consequently did not rely on the vocational expert's answer to this hypothetical question. The ALJ relied on the VE's response to the initial hypothetical question, where the VE testified Plaintiff could return to two of her past relevant jobs (Tr. 282). VE Bradford responded, "no

10

sir," when the ALJ asked her if there were any conflicts between her testimony and the DOT (Tr. 283).

## Evidence Submitted to the Appeals Council

On June 26, 2007, Dr. Lanford filled out a "Medical Source Statement of Ability To Do Work-Related Activities (Physical)" like the one Dr. Cox had filled out on February 4, 2007 (262-65). Dr. Lanford filled out the initial page of the form in the same way that Dr. Cox had (compare Tr. 239 and 262). Thus, like Dr. Cox, Dr. Lanford limited Plaintiff to lifting ten pounds occasionally and less than ten pounds frequently (Tr. 262). Dr. Lanford limited her standing/walking to less than two hours in an eight-hour workday and he limited her sitting to about four hours in an eight-hour workday (Tr. 262). Where Dr. Cox thought that Plaintiff was capable of performing high stress work (Tr. 240), Dr. Lanford opined that she was incapable of even low stress jobs (Tr. 263).

## Analysis

*Did Plaintiff Meet Listing 1.04(A)?*

Plaintiff asserts the record establishes that she met and/or equaled the requirements of Listing 1.04A, disorders of the spine, of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, due to her shoulder and neck injury (Plaintiff's Brief at 4-7). Plaintiff asserts her condition satisfies the requirements of 20 C.F.R., Part 404, Subpt. P, App. 1, Listing 1.04A (disorders of the spine) because there is evidence of limitation of motion of the spine ( Doc. 11, p. 7). Listing 1.04 provides the following:

**1.04** **Disorders of the spine** (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root (including cauda equina) of the spinal cord. With:

11

**A**. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg raising test (sitting and supine); or

**B**. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

**C**. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

If a claimant's impairment meets the medical criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she will be found disabled. 20 C.F.R. § 404.1520(d); *Zebley v. Sullivan*, 493 U.S. 521, 529 (1990). However, a claimant's impairment must match all of the specified medical criteria in order to show the impairment meets a listing. 20 C.F.R. § 404.1525(c); *see also, McCoy v. Commissioner of Social Security*, 81 F.3d 44, 46 (6th Cir. 1995). Failure to meet or equal even one of the required criteria dictates a finding that a claimant does not meet or medically equal a listed impairment. *See Zebley*, 493 U.S. at 891 ("The level of severity in any particular listing section is depicted by the *given set* of findings and not by the degree of severity of any single medical finding-no matter to what extent that finding may exceed the listed value") (emphasis in original). In addition, the claimant bears the burden of establishing every element of the specified criteria. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987) (claimant bears burden of proof at step three); *McCoy*, 81 F.3d at 46.

The medical evidence does not support Plaintiff's claim of listing level severity. On May 15, 2005, Dr. Drake reported that passive ranges of Plaintiff's spine were "OK" (Tr. 184). Similarly, on

12

September 15, 2005, Dr. Drake stated that he believed Plaintiff's passive range of motion was fine (Tr. 184). Plaintiff also asserts that she has produced evidence of radicular pain in her legs (Plaintiff's Brief at 7). On October 26, 2006, four weeks after he performed surgery, Dr. Lanford reported that Plaintiff did not have a significant radicular component (Tr. 253). Plaintiff points to positive straight leg raising, but on June 16, 2006, Dr. Drake reported that straight leg raising was negative bilaterally (Tr. 182). Plaintiff acknowledges that the positive results on straight leg raising tests must be produced in both sitting and supine positions (Plaintiff's Brief at 7), but Dr. Cox reported negative results on seated straight leg raising tests (Tr. 243). Plaintiff's condition, therefore, cannot meet the requirements of Listing 1.04. *See Ex. rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("In order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing. It is insufficient that a claimant comes close to meeting the requirements of a listed impairment.") (citations omitted).

Although Plaintiff argues the ALJ merely stated a general conclusion that she had no impairment of listing severity (Doc. 11, p. 7), the Sixth Circuit has required only minimal articulation at step three of the sequential analysis. *See Price v. Heckler*, 767 F.2d 281, 284 (6th Cir. 1985) (minimal articulation required at step three). I conclude Plaintiff has not met her burden to show a listing level severity.

*Did the ALJ Err in Rejecting the Opinion of Dr. Michael Cox?*

Plaintiff next argues the ALJ failed to give proper consideration to the opinion of Dr. Cox. She contends the examining physician should be given greater weight than the opinion of a source who has not examined you (20 C.F.R. 404.1527(d)(1)), (Doc. 11, p. 8, 9). For reasons that follow, I conclude there is substantial evidence to support the decision of the ALJ.

13

Prior to January 03, 2007, when Dr. Cox saw Plaintiff, the record contained only one opinion that set out Plaintiff's vocational capabilities, including lifting, standing/walking, sitting etc., and that was the opinion expressed by state agency reviewing physician, Dr. Misra on March 22, 2005 (Tr. 172-80). Dr. Misra opined that Plaintiff could lift up to 50 pounds occasionally and up to 25 pounds frequently (Tr. 173). Dr. Misra found that Plaintiff could stand and/or walk for about 6 hours in an 8-hour day and that she could sit for a similar period of time (Tr. 173). The ALJ gave greater weight to Dr. Misra's opinion than he did to the opinions set out by Dr. Cox in January-February 2007, because Dr. Misra thoroughly reviewed all the records and limited Plaintiff to a modified range of medium work (Tr. 19).

Dr. Cox was not a treating physician but rather an examining physician. The ALJ explained that he could not assign great weight to Dr. Cox's opinion because Dr. Cox appeared to base his opinion, that Plaintiff could only perform a restricted range of sedentary work, primarily on her subjective complaints (Tr. 19). The ALJ also found that Dr. Cox's opinion was not supported by the objective medical evidence of record (Tr. 19). The ALJ contrasted Dr. Cox's severe restrictions with his examination observations and findings. The ALJ noted that, on examination, Dr. Cox found that Plaintiff was not in medical distress, that she was able to stand on her heels and toes and on either leg, albeit briefly and with difficulty (Tr. 21, 243). The ALJ also took note of Dr. Cox's statement that Plaintiff was completely unlimited in the use of her upper extremities (Tr. 21, 243). The ALJ also noted no other examining physicians had imposed limitations on her ability to work. The ALJ found such normal findings did not justify an opinion, like the one expressed by Dr. Cox, who concluded Plaintiff would have bad days that would require her to miss work more than four times each month or that would require her to take unscheduled breaks during her workday (Tr. 21). In addition to those

14

stated reasons, the opinion of Dr. Cox is not given until 13 months after Plaintiff's date of last insured.

The ALJ was confronted with two medical opinions and relied on the opinion he found to be more supported by the objective and opinion evidence of record. That record included rather sporadic treatment between Plaintiff's alleged onset date of August 22, 2004, when she woke up with back pain (Tr. 155), and September 30, 2005, the date her insured status expired. Plaintiff saw Dr. Drake on August 23, 2004, and he referred her to a neuro-surgeon, Dr. Cruz (Tr. 155). Plaintiff saw Dr. Cruz on August 30, 2004 (Tr. 128-29), but despite being dissatisfied with Dr. Cruz, Plaintiff did not see Dr. Drake again for approximately eight months, or until May 15, 2005 (Tr. 184). On that date, Dr. Drake reported that she had "OK" passive ranges of motion (Tr. 184). Plaintiff then saw Dr. Drake again on September 15, 2005, after another flare-up of back pain and Dr. Drake again reported that her passive range of motion was fine (Tr. 184). I conclude there is substantial evidence to support the decision of the ALJ to reject the opinion of Dr. Cox.

*Did the ALJ Err in Discounting Plaintiff's Complaints of Pain?*

Next, Plaintiff argues the ALJ committed error in rejecting Plaintiff's complaints of disabling pain. However, Plaintiff produced very little evidence supporting her claims of disability prior to the expiration of her insured status. She objects to the ALJ's adverse credibility finding (Doc. 11, pp. 10, 11). The basis of this objection is the ALJ's reliance on such activities as the ability to take her children to school, the ability to take care of her personal needs, and her ability to perform such household chores as laundry (Tr. 21). An ALJ may review a claimant's daily activities when making a credibility finding. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) ("As a matter of law, an ALJ may consider household and social activities in evaluating

complaints of disabling pain.") Given the deference due to an ALJ's credibility finding, the minimal care Plaintiff sought and/or received prior to the expiration of her insured status, the opinion of the reviewing physician, Dr. Misra, I conclude there is substantial evidence to support the ALJ's adverse credibility finding. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying.").

One other issue remains: the effect of Dr. Lanford's June 26, 2007, Functional Assessment Form. Plaintiff argues that the assessment Dr. Lanford is consistent with the assessment done by Dr. Cox in January 2007, and therefore supports her contention that she is disabled (Doc. 11, p. 10). However, Plaintiff acknowledges she did not submit Dr. Lanford's assessment to the ALJ prior to the date he issued his decision, March 9, 2007 (Tr. 22). Plaintiff has stated that she submitted Dr. Lanford's form to the Appeals Council (Doc. 11, p.5). Because this evidence was not before the ALJ, it cannot be part of this Court's substantial evidence review. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (When an ALJ renders the final decision of the Commissioner, additional evidence submitted to the Appeals Council before or after the Appeals Council denies review should be considered only for the purposes of a sentence six remand).

Because Plaintiff has not requested a sentence six remand based on Dr. Lanford's form, the Court cannot grant that remedy either. *See Wyatt*, 974 F.2d 680, 685 (6th Cir. 1992) ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where the party seeking remand shows that the new evidence is material.") (citing *Willis*). Dr.

16

Lanford's form can play no role in the resolution of this case. Even if it could be considered under sentence six, it is an assessment more than 18 months after Plaintiff's date of last insured and would therefore not be material in the context of a Sentence Six Remand.

<u>Conclusion</u>

For the reasons stated herein, I RECOMMEND that the Commissioner's decision be AFFIRMED. It is further RECOMMENDED that Defendant's Motion for Summary Judgment (Doc. 12) be GRANTED, the Plaintiff's Motion for Judgment on the Administrative Record (Doc. 10) be DENIED, and this case be DISMISSED [1].

Dated:  January 26, 2009          s/*William B. Mitchell Carter*
                                   UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10 days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers,* 829 F.2d 1370 (6th Cir. 1987).